## Overton's Heirs *vs.* Overton's Executors.

### APPEAL FROM FAYETTE CIRCUIT.

Case 12,

WILL CASE.

1. " In all cases involving the capacity of a person to make a will the inquiry is, was such person, at the time of making and publishing the paper offered as his will, of sound and disposing mind? The degree of capacity necessary to make a valid will must be determined by the courts of the country, which are to be governed by the rules of evidence applicable to such cases."

2. That a will was written by the testator himself, and its provisions altogether sensible, proper, and judicious, is to be regarded as the best evidence of capacity at the making of the will. (*Wiers Will Case*, 9 *Dana*, 440; *Jarman on Wills*, 1 *vol.* 51—68; *Cartwright vs. Cartwright*, 1 *Phill.* 90.)

3. When the court is satisfied that the finding of the jury is right, and sustained by the proof, it will not consider it necessary to examine the correctness of the instructions of the court given on the trial in

cases involving the right of probate originating in the county court, and brought to this court from the circuit court, reversing the judgment of the county court under the 27th, 28th, and 36th *secs. of chap.* 106 *of Rev. Stat. title Wills, page* 700.

4. It is the duty of this court to decide cases coming to this court, as this has, upon the law and the facts, which decision is to control the action of the probate court, and thence it is unnecessary to decide upon the instructions given to the jury by the circuit court, as that court can take no other action in the case than to record the mandate of this court admitting or rejecting the probate of the will, and certifying it to the county court.

5. The rule is different when the issue is made up and tried by a jury in a chancery suit, brought to set aside a will admitted to probate. (*Sec.* 38, *Rev. Stat.* 700.)*

CASE STATED.          This case involves the probate of John Overton's will. It was an appeal to the circuit court from the decision of the county court, rejecting the will, and upon a trial by a jury in the circuit the finding of the jury was in favor of the will, and judgment rendered in favor of the will, and the heirs have appealed to this court.

*Robinson & Johnson*, and *Buckner*, for appellants—

The contestants of the probate of the will complain of the instructions of the court. The bill of exceptions sets forth the evidence and instructions. If the instructions are correct there is no ground for disturbing the verdict; but the evidence is such, that had the jury found against the will there could have been no ground for setting it aside, as against the weight of testimony.

The ninth instruction, particularly complained of, as invading the province of the jury, is an instruction upon the weight of the evidence. Of this character is the second instruction also. Of the third instruction we complain, as vague, misleading and erroneous, according to its literal import, in which it is said that a particular state of mind qualifies a tes-

[*NOTE.—See MSS. opinion in the matter of Hooten's Will, delivered December 30th, 1857, where this court decided upon the merits, irrespective of the verdict by the jury, and instructions of the circuit court. REP.]

tator to make a will, whatever mental disease may be preying upon him.

The ninth instruction is in substance, that although the testator's mind may have been diseased and unsound, yet, unless the jury could trace that unsoundness into the particular provisions of the will, and be satisfied that some particular provision was the offspring of insanity, the writing is his will. This proposition we hold to be unsound. The statute concerning wills requires the testator to be of sound mind—unsoundness of mind may consist either in imbecility or disease of mind. In this case the question was whether or not Overton's mind was diseased, and so far diseased as to be unsound.

By the ninth instruction the jury were cut off from considering whether insanity had not so destroyed the mind of the testator as to render him incapable of making any valid will. Whether his insanity did not cause him to omit provisions which in a sane state of mind he would have placed in his will; in fact whether he had any sane purpose in regard to the disposition of his property.

*George B. Kinkead*, for appellees—

From the facts appearing in this case it is impossible that any verdict of a jury against the will could be permitted to stand. And this court will not send back this case for a new trial, though the instructions may not be strictly and technically right.

[*Note.*—The argument is wholly on the facts, and no citation of authority. REP.]

Judge STITES delivered the opinion of the court.

June 9, 1857

The *Revised Statutes, chap.* 106, *sec.* 2, 693, declares that "every person of sound mind, not being under twenty-one years of age, nor a married woman, may, by will, dispose of any estate," &c.

In all cases involving the capacity of a person to make a will the inquiry is, was such person, at the time of making and publishing the paper offered as

1. "In all cases involving the capacity of a person to make

Overton's H's
vs.
Overton's Ex's

a will the inqui-
ry is, was such
person, at the
time of making
and publishing
the paper offer-
ed as his will, of
sound and dis-
posing mind?
The degree of
capacity neces-
sary to make a
valid will must
be determined
by the courts of
the country,
which are
to be governed
by the rules of
evidence appli-
cable to such
cases."

2. That a will
was written by
the testator him-
self, and its pro
visions altogeth-
er sensible, pro-
per, and judi-
cious, is to be
regarded as the
best evidence of
capacity at the
making of the
will. (Weirs
Will Case, 9
Dana, 440; Jar-
man on Wills, 1
vol. 51—68;
Cartwright vs.
Cartwright, 1
Phill. 90.)

3. When the
court is satisfied
that the finding
of the jury is
right, and sus-
tained by the
proof, it will not
consider it nec-
essary to exam-
ine the correct-
ness of the in-
structions of the
court given on
the trial in cases
involving the
right of probate
originating in
the county court,

his will, of sound and disposing mind? The degree of capacity necessary to make a valid will has to be determined by the courts of the country and in ascertaining whether such capacity exists they are to be governed, necessarily, by rules of evidence applicable to such cases, and deemed authoritative, because founded upon reason and experience, and so recognized by enlightened jurists.

Among these rules is that which raises a presumption of a lucid interval with a lunatic, and sufficient capacity at the time to make a will, when the will is written altogether by him in his natural manner, and the provisions of it are altogether sensible, proper, and judicious. Such a state of fact is, and has been, well regarded as the best evidence, not of general sanity and capacity to make a will, but of such capacity at the time of the execution of the paper propounded as the will, at which time the law demands proof that the capacity existed. (*Weirs Will Case*, 9 *Dana*, 440; *Jarman on Wills*, 1*st. vol.*, 51, 68; *Cartwright vs. Cartwright*, 1*st Phill.* 90.)

Applying this well established rule to the present case, and we think the character of the paper offered as the will, and other evidence in the record, authorizes its application, we feel no hesitation in saying that the facts fully sustain the finding of the jury.

Concurring then, as we do, with the jury upon the facts of the case, an important inquiry arises as to the propriety of considering the instructions complained of. And this arises upon the language of the sections of the Revised Statutes authorizing an appeal to this court in cases of probate originating in the county court; for it must be remembered that this is not an issue of *devisavit vel non* out of chancery, had under the 38th section of the chapter on wills; (*Revised Statutes*, 700;) but a case involving the right of probate, originating in the county court, and brought by appeal from the judgment of the circuit court reversing the action of the probate judge, under

the 27th, 28th and 36th sections of the same chapter. (*Revised Statutes*, 698–99.

The 27th section determines the jurisdiction of the county court in matters of probate.

The 28th enacts that "a writ of error, or an appeal ' shall lie from the county court to the circuit court of ' the county and thence to the court of appeals upon ' every order admitting or rejecting it. The circuit ' court and court of appeals shall *try both law and fact*, ' but the court of appeals shall not hear or adjudge ' any matter of fact pertaining thereto other than such ' as may be certified from the circuit court, &c."

Section 36 provides that "when the proceeding is taken to the circuit court, all necessary parties shall be brought before the court; and upon the demand of any one of them a jury shall be impanneled to try which or how much of any testamentary paper produced is, or is not, the last will of the testator. If no jury be demanded the court shall determine that question, and the final decision given shall be a bar to any other proceeding to call the probate or rejection of the will in question, subject to the right of appeal or writ of error to the court of appeals as *hereinbefore named*; but nothing in this section shall preclude a court of chancery from its jurisdiction to impeach such final decision, for such reason as would give it jurisdiction over any other judgment at law."

Now if, as provided in the 28th section *supra*, this court is to try "*both law and fact*," and its opinion upon the law and facts is to control the action of the probate court, it is obviously unnecessary to pronounce upon the correctness of the instructions allowed by the circuit court; for whatever view may be entertained upon that question, the jurisdiction thus conferred, dispenses virtually with further action in the circuit court beyond entering the mandate of this, rejecting or admitting the will to probate, and making the necessary directory order to the county court having original jurisdiction. The effect of such

*Margin notes:*

OVERTON'S H's *vs.* OVERTON'S Ex's and brought to this court from the circuit court reversing the judgment of the county court under the 27, 28, and 36 *secs. of chap.* 106 *of Rev. Stat. title Wills, page* 700.

4. It is the duty of this court to decide cases coming to this court, as this has, upon the law and the facts, which decision is to control the action of the probate court, and hence it is unnecessary to decide upon the instructions given to the jury by the circuit court, as that

OVERTON'S H's
vs.
OVERTON'S Ex's

court can take
no other action
in the case than
to record the
mandate of this
court admitting
or rejecting the
probate of the
will, and certify-
ing it to the
county court.

construction will be to have such cases disposed of in this court upon the record as though here originally.

An examination of the previous statutory regulations upon this subject, and a consideration of the sections in question, induce us to the conclusion that such is the meaning and effect of the provisions, and that such was the intent of the Legislature.

By the act of 1796 (1st *Statute Law*, 130) this court was vested with jurisdiction to try questions of law and fact in appeals or writs of error in matters of probate; and until the act of 1842 entitled "an act to amend the probate of wills," (3rd *Statute Law*, 585,) the appeal or writ of error lay directly from the county court to this, and the case was heard here as before the county court. By the act, last referred to, intermediate appellate jurisdiction in such cases was conferred upon circuit courts, and in the 3rd section thereof it was provided "that either party may prosecute an appeal or writ of error from the decision of the circuit court to the court of appeals in the cases aforesaid, and that court shall try and determine the controversy on the *law and evidence* apparent on the record."

This section proceeds to provide how the evidence adduced before the circuit court and other matters moved and decided therein may be spread of record, &c. The obvious intent of the act was, not to divest this court of the jurisdiction conferred by the original act, but to interpose an intermediate appellate tribunal, and provide for bringing up the case upon the record as other cases, and thus obviate the necessity of the personal attendance of witnesses in this court, and the delays and heavy expense incurred theretofore by litigants in such controversies.

The language of the 28th section of the *Revised Statutes supra*, is substantially similar to that of the 3rd section of the act of 1842, and it was manifestly designed by the revisors to retain that feature of the last named act respecting the jurisdiction of this court over the law and facts of the case. This is

apparent not only from the similarity of its provis- <span style="float:right">OVERTON'S H's</span>
ions, but likewise from the marginal reference to the <span style="float:right">OVERTON'S Ex's</span>
act of 1842.

The 36th section *supra*, it is true, gives to any par-
ty demanding it a jury to try "which or how much of
any testamentary paper produced is or is not the
last will, &c.," but the final decision is still "subject
to the right of appeal or writ of error to the court of
appeals" as thereinbefore "named," and this right is
regulated and defined, both as to the manner of pro-
ceeding and extent of jurisdiction of this court in the
28th section, the only one upon that subject in the
chapter.

It will be observed that there is a saving in the
act of 1842, *supra*, as well as in the 38th section of
the chapter on wills in the *Revised Statutes*, 700, ex-
empting cases arising upon issues upon wills in suits
in chancery from the operation of the section in ques-
tion, and such cases stand upon the same footing with
other cases in this court, but in questions of probate
originating in the county court and brought here by
appeal, the law, in our opinion, requires of us "to try
both law and fact" and to determine whether or not
the will or paper in dispute shall be admitted to pro-
bate, without remanding the cause for a new trial in
the circuit court.

> 5. The rule is different when the issue is made up and tried by a jury in a chancery suit, bro't to set aside a will admitted to probate. (*Sec.* 38, *Rev.Statutes*, 700.)

This conclusion obviates the necessity of passing
upon the instructions to the jury, for whether correct
or erroneous is not important, as upon our opinion of
the law and facts, arising upon the record, the paper
in question is established as the last will of the tes-
tator Overton.

Judgment *affirmed*.